## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Anthony James Eason, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:16cv297 (LO/IDD) |
| | ) | |
| Harold W. Clarke, | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION

Anthony James Eason, a Virginia inmate, has filed a petition for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions entered in the

Circuit Court of the City of Newport News.  On July 8, 2016, respondent filed a Motion to

Dismiss and Rule 5 Answer, along with a supporting brief and exhibits.  Petitioner, by counsel,

filed an Opposition to Motion to Dismiss on July 19, 2016.  By Order dated August 22, 2016,

petitioner's Motion to File a Supplemental Brief in Opposition to Motion to Dismiss was

granted.  On September 2, 2016, respondent filed a Response to Supplemental Brief in

Opposition to Motion to Dismiss.  For the reasons that follow, respondent's Motion to Dismiss

will be granted, and the petition will be dismissed, with prejudice.

### I. Background

Petitioner is detained pursuant to a final judgment of the Circuit Court of the City of

Newport News, entered December 9, 2011.  Motion to Dismiss at Ex. 1.  Pursuant to a bench

trial, petitioner was convicted of two counts of aggravated malicious wounding in violation of

Virginia Code § 18.2-51.2(A), two counts of use or display of a firearm during the commission

of a felony in violation of Virginia Code § 18.2-53.1, and one count of possession of a firearm by

a felon in violation of Virginia Code § 18.2-308.2. Id. Petitioner was sentenced to fifty three

years imprisonment, with no years suspended. Id.

Petitioner pursued a direct appeal to the Court of Appeals of Virginia, which was granted

in part and denied in part. Id. at Ex. 3. The Court of Appeals of Virginia affirmed petitioner's

convictions. Id. at Ex. 4. The Supreme Court of Virginia subsequently refused his petition for

appeal on October 9, 2013. Id. at Ex. 5.

After pursuing his direct appeal, petitioner timely filed a petition for a writ of habeas

corpus in the Circuit Court of the City of Newport News on October 10, 2014. The facts as laid

out by the state habeas court are as follows.

> Lanita White was watching over Azire Marshall, the child of her
> girlfriend, Laura Marshall, on [November 10, 2006]. White and the child were at
> Marshall's apartment in Ashton Green on Seagull Court. White recalled that
> Marshall had instructed her not to turn over the child to the father, [petitioner].
> [Petitioner's] mother and some other individuals, not including [petitioner], came
> to the apartment to retrieve the child. White told them she could not give them
> the child until the mother, Marshall, returned. The individuals forcefully took the
> child from White's possession; a male grabbed her arm while the grandmother,
> [petitioner's] mother, took the child. White then left the house and went to the
> residence of her friend, Jamel Bennette. White told Bennette about the incident
> with [petitioner's] family and child. Bennette decided to go to Ashton Green and
> Devon Thomas accompanied Bennette along with Rodney Williams and Ben
> Shelvin. Bennette told Thomas they were going to talk to somebody about White
> and a baby.
>
> When they arrived at the apartment complex, they saw a man who Thomas
> identified in Court as Mitchell. "Jamel put his head out the window and asked
> Mitchell to get [petitioner]." They sat parked in the car until [petitioner] and
> "Rio", Mitchell's street name, arrived three to five minutes later. [Petitioner]
> motioned for Bennette to approach him. Thomas and Bennette got out of the car
> and walk [sic] toward Mitchell and [petitioner]. While the men were arguing,
> Mitchell and [petitioner] pulled out their guns and began shooting at Thomas and
> Bennette; Thomas and Bennette ran in different directions.
>
> Thomas testified he suddenly heard swearing, turned, and was shot in the
> chest five inches from his heart. He ran toward the truck and saw Bennette was
> also running. As Thomas ran, he was shot in the back and buckled. Thomas saw

2

[petitioner] and Mitchell shooting at Bennette, while Bennette was lying by a light pole. Thomas thought he heard at least nine shots. Thomas believed Mitchell had shot him.

White saw both victims, Thomas and Bennette, shot by [petitioner] and Rio. White testified [petitioner] was continuously shooting Bennette from behind. Rodney Williams testified [petitioner] pointed his gun at Bennette, while Mitchell had his gun pointed at Thomas. White did not see the victims pull out guns, but only saw them run. She had no personal knowledge that would indicate anyone had a weapon when they went to Ashton Green and she never saw a weapon in Thomas' or Bennette's possession. Additional testimony corroborated that Bennette and Thomas did not have guns with them and they did not own guns.

Prior to the argument and shooting, Williams called Marcus George to meet them over at the apartment complex, because he knew George had a gun. After the shooting, George, armed with a gun, pulled up in a gray Chevy Caprice. George pulled in while [petitioner] and Rio were leaving the scene. Rodney Williams checked on Bennette before jumping in George's car to follow [petitioner] and Rio. …

George's gun was in between the seat in the car as he and Williams followed [petitioner] and Mitchell. Williams and George were stopped by the police, and Williams admitted they were a little belligerent because of the situation. … Officer Kelly recovered the gun between the driver and the center console, between the seats. George was released on a summons for a concealed weapon and went back to the scene. The weapon recovered was a Cobra firearm FS-380, purchased by Marcus George in Atlanta and registered lawfully. It was determined that George was not involved in the shooting, that he had actually been chasing down the shooters for his friends, and based on that the police did not charge him further. There was no contention that this gun was involved in the shooting of Thomas and Bennette. The gun was destroyed on March 1, 2008.

Newport News Police Detective Darlene Best investigated the shooting of Jamel Bennette and Devon Thomas. She received a report form Detective A.M. Hahn summarizing his interview with witness Gwendolyn T. Priest. Detective Hahn wrote a report on November 15, 2006, indicating that Priest identified George's vehicle as the vehicle she described leaving the scene. Detective Best was aware the vehicle was stopped with George and Williams inside. The report indicated that Priest stated she saw a male with a white T-shirt, who she previously described as a black male, almost shaved hairstyle, around 25 years of age, and 5'11'', running from the area of the shooting and what Priest described as a shiny semi-automatic handgun wrapped in a coat which he threw into the back of a vehicle.

****

3

During the trial, [petitioner] testified that he retrieved his son from White on November 6, 2010 [sic]. [Petitioner] testified that he was sitting at home when Rio knocked on his door. According to [petitioner], he lived in the same apartment complex as White and Marshall, his child's mother, and drove with Rio to the apartment. [Petitioner] claimed that he was going to Marshall's house when Bennette hollered something. He contended that Bennette was being loud and threatening, and that he did not have a problem with Bennette or Thomas. [Petitioner] claimed he was trying to calm the situation down. [Petitioner] testified he saw Thomas out of the corner of his eye moving, and "seen him pull out, and by the time he did that, he see Rio shooting." [Petitioner] testified that he did not have a gun and did not shoot anyone. [Petitioner] never claimed self-defense. [Petitioner] testified he saw Thomas with a black revolver, but did not see Bennette with a gun until Thomas was shot. [Petitioner] testified he never actually saw Thomas or Bennette fire a gun. He claimed that he left the scene and never made contact with police for three years even though he knew there were warrants out for his arrest. [Petitioner] said he wanted to get money together to be properly represented and to find his son. [Petitioner] never saw a car matching the description of Marcus George's car that day.

[Petitioner] admitted to Jahil Wiley, a convicted felon who was incarcerated on pending robbery charges at the time of [petitioner's] trial, that he was responsible for the shootings and planned to put in all on his co-defendant.

****

On November 8, 2011, [petitioner] filed a Motion for New Trial, Bond, and to Set Aside the Verdict, and Renewed Motion to Dismiss the Charges Due to Destruction of Evidence, which was dated November 4, 2010. After trial, [petitioner] produced an affidavit procured from Gwendolyn Priest. [Petitioner] alleged that Priest's statement in the affidavit, dated September 21, 2011, was different from the statement that Detective Hahn took at the time of the incident five years earlier. In that prior statement Priest said that two men, one of which was armed, fled from the scene of the shooting. Allegedly, in the affidavit, Priest stated she believes she told the police both men were armed. [Petitioner] argued the possession of guns by both Rodney Williams and Marcus George after the shooting "permeates" the entire case. [Petitioner] argued he attempted to talk to Priest prior to trial but was unable to do so. The affidavit was obtained after trial by [petitioner's] family who obtained money to hire a private investigator to interview Priest.

****

4

> The Court ruled the affidavit from Priest was not after-discovered
> evidence and denied the motion. The decision was upheld on appeal by the Court
> of Appeals and Supreme Court of Virginia.

Case No. CR14H02102 (alterations omitted). The circuit court denied and dismissed the habeas

petition by order dated December 16, 2014. Id. The Supreme Court of Virginia denied the

petition for appeal on February 24, 2016. Record No. 150415.

On March 9, 2016, petitioner filed the instant federal petition, wherein he challenges his

conviction on nine allegations of ineffective assistance of counsel. Specifically, he alleges that

his counsel:

1. Failed to investigate and compel petitioner's key witness.

2. Violated the fundamental fairness of petitioner's trial.

3. Failed to raise Brady violation on appeal.

4. Failed to object to Brady violation when testimony of two suppressed photo
spreads were presented implying third party guilt.

5. Failed to communicate with petitioner's co-defendant's attorney and discovery
co-defendant's mental health history.

6. Failed to communicate with petitioner's co-defendant's attorney and investigate
co-defendant's identification.

7. Failed to raise newly discovered evidence of co-defendant's incompetency and
mental history on appeal.

8. Failed to object to numerous occasions of prosecutorial misconduct.

9. Failed to object to prosecutorial misconduct when prosecutor knowingly
allowed false testimony.

Dkt. No. 1.

5

## II. Timeliness

Despite respondent's arguments to the contrary, the instant petition was timely filed. A §
2254 petition for a writ of habeas corpus must be dismissed if filed later than one year after (1)
the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3)
the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual
predicate of the claim could have been discovered with due diligence.    28 U.S.C. §
2244(d)(1)(A)-(D).

Respondent argues that the statute of limitations began running on October 9, 2013, the
date the Supreme Court of Virginia denied petitioner's petition for appeal on direct review;
however, petitioner had ninety (90) days from October 9, 2013, to file a petition for certiorari in
the United States Supreme Court.[1] Thus, the statute of limitations began running on January 7,
2014.

In calculating the one-year period, however, the Court must exclude the time during
which state collateral proceedings pursued by petitioner were pending.   See 28 U.S.C. §
2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408 (2005) (determining that the definition of
"properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the
applicable state law as interpreted by state courts).   On October 10, 2014, petitioner filed a state
habeas petition in the Circuit Court of the City of Newport News, which denied his petition on
December 16, 2014.   Petitioner then appealed to the Supreme Court of Virginia, which refused

---

[1] See U.S. Sup. Ct. R. 13(1) (petitions for review are timely filed within 90 days of the
entry of judgment by a state court of last resort); see also Lawrence v. Florida, 549 U.S. 327, 333
(2007) (reaffirming the inclusion of time for seeking review by the Supreme Court in calculating
when direct review of a state criminal conviction becomes final under § 2244(d)).

the petition for appeal on February 24, 2016.  Petitioner filed the instant petition on March 9, 2016.[2]

From January 7, 2014, the date petitioner's conviction became final, to October 10, 2014, the date petitioner filed his state habeas petition, 276 days passed.  From February 24, 2016, the date the denial of petitioner's state habeas petition became final, to March 9, 2016, the date petitioner filed his federal petition, an additional 14 days passed.  When these days are combined they establish that the instant petition was filed 289 days after petitioner's judgment became final.  Accordingly, the petition is timely under § 2244(d).

### III. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas corpus petition, a federal court may not grant the petition on that particular claim unless the state court's adjudication was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts presented at the trial.[3]  28 U.S.C. § 2254(d)(1)-(2).  This test erects a "formidable barrier to federal habeas relief" for claims adjudicated on the merits.  Burt v. Titlow, 134 S. Ct. 10, 16 (2013).  Under this standard, for a state prisoner to obtain habeas relief, he "must show that the state court's ruling on the claim

---

[2] For purposes of calculating the statute of limitations, a petition is deemed filed when the prisoner delivers his pleading to prison officials.  Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991); Houston v. Lack, 487 U.S. 266 (1988).

[3] The Supreme Court of Virginia refused further review of petitioner's state habeas petition by its February 24, 2016 Order.  Because the Circuit Court of the City of Newport News' order was the last reasoned state court decision on petitioner's claims, its reasoning is imputed to the Supreme Court of Virginia.  See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991).  As such, only the Circuit Court of the City of Newport News' order will be reviewed.

Baker v. Dir., Va. Dep't of Corr., No. 1:13CV1003 LMB/JFA, 2014 WL 1305001, at *3 (E.D. Va. Apr. 1, 2014), appeal dismissed sub nom. Baker v. Dir. of Virginia Dep't of Corr., 580 F. App'x 225 (4th Cir. 2014)

being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based upon an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination violates the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. When reviewing the state court's findings, the federal court is limited to the record before the state court at the time of the decision. See Cullen v. Pinholster, 563 U.S. 170 (2011).

Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Importantly, this standard of reasonableness is an objective one, and does not allow a federal court to review simply for plain error. Id. at 409-10; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003). In addition, a federal court should review the state court determination with deference; a federal court cannot grant the writ simply because it concludes that the state court incorrectly determined the legal standard. See Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (internal citations omitted). A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke,

545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

## IV. Analysis

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). Under this test, a petitioner must prove both that his attorney's performance was so deficient "that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and that this performance prejudiced the outcome of petitioner's trial. Strickland, 466 U.S. at 687. To meet the second prong, petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The two prongs, deficient performance and prejudice, constitute "separate and distinct elements." Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). Therefore, a court can appropriately dismiss an ineffective assistance of counsel claim on either prong. Strickland, 466 U.S. at 697; see also Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citations omitted) ("Without proof of both deficient performance and prejudice to the defendant, we concluded it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand"). A court reviewing a claim of ineffective assistance of counsel must presume that counsel acted competently, and should determine the merits of the claim based on the information available to the attorney at the time of the trial. See, e.g., Bell, 535 U.S. at 695; Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000).

## A. Claim One

Petitioner states that he was denied effective assistance of counsel because his trial counsel did not make a reasonable investigation into what Priest witnessed or follow the proper procedure for subpoenaing an out of state witness. Petitioner argues that his trial counsel's inadequate efforts mislead petitioner into believing that Priest made a statement to the prosecution and that she was not a material witness. Thus, petitioner asserts, his trial counsel failed to act objectively reasonable when he advised petitioner to go forward with his trial without Priest as a witness. Specifically, petitioner argues that objectively reasonable counsel would have recognized the importance of Priest's testimony to corroborate petitioner's testimony that he had no gun and that the victims were armed, particularly in light of the inconsistent statements of other witnesses that implicated petitioner. Petitioner also states that his trial counsel's failure to show petitioner's indigence in order to have Priest's travel expenses paid for allowed the New York court to dismiss petitioner's out of state subpoena.

Petitioner goes on to argue that Priest's testimony that she actually saw two individuals, each with a gun, leaving the scene would have "changed the entire evidentiary picture" and "impeach[ed] the Commonwealth's witnesses" such that there is a reasonable probability that the trial outcome would have been different.

The state habeas court denied petitioner's claim, finding that the arguments failed to satisfy either prong of the <u>Strickland</u> test. Specifically, the court found

> [T]hat trial counsel made significant efforts to both investigate Priest and to compel her to be at the trial. Trial counsel hired an investigator who was able to find Priest in New York. Trial counsel attempted to subpoena an out of state witness. The New York court denied the subpoena. Trial counsel made numerous attempts to procure Priest's testimony and to determine why the New York court did not require her to travel to Virginia for the trial. Trial counsel and the petitioner made the decision to go forward, and the record is clear that

10

[petitioner] himself wished to proceed with the trial without Priest. Trial counsel attests he did not know at the time of trial that [petitioner's] family would gather the funds to hire another investigator so quickly. Trial counsel did the best he could under the circumstances to obtain the cooperation of witnesses. [Petitioner] has failed to show how his trial counsel's performance was deficient in light of the circumstances.

The Court finds that [petitioner] also failed to demonstrate that he was prejudiced by the alleged failure of counsel. The Court of Appeals has already determined that the testimony proffered in Priest's affidavit would not have resulted in a different outcome at trial. [Petitioner] raised the same theory based on Priest's statement to the police at trial. The affidavit given five years after the fact presents only a slight change in what Priest believes she saw. The Court finds that the discrepancy in whether she saw one or two guns potentially in the possession of George and Williams after the shooting does not change the theory the police had in investigating the crime and the Court in finding [petitioner] guilty.

This Court's ruling in finding [petitioner] guilty was a length analysis of the evidence presented at trial. The presence of potential additional guns by friends of the victims after the shooting does not have sufficient materiality so as to produce a different result of [petitioner's] guilt. The Court weighed the evidence, and, as fact finder, accepted Thomas' testimony that he was not armed. Even if Thomas and Bennette, the victims, were armed, the Court noted the case went above and beyond reasonable force and self-defense. It is important to note, [petitioner] did not allege he acted in self-defense based on the presence of guns by either the victims or their friends. [Petitioner] has not shown he would not have been found guilty based on the testimony or Priest's affidavit, as the proffered testimony has no bearing on his culpability. Therefore, [petitioner] has not met his burden to demonstrate that the evidence was such that it would produce opposite results at another trial.

The state habeas court's determination that petitioner failed to show his trial counsel's efforts were deficient or that he was prejudiced by his trial counsel's failure to obtain Priest's testimony for the trial, is neither contrary to, nor an unreasonable application of, existing federal law. The state habeas court's determination also does not rest on an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference and Claim One will be dismissed.

11

### B. Claim Two

Petitioner contends that he was denied effective assistance of counsel because his trial counsel allowed a pretrial motion to be heard the same day of trial. Petitioner asserts that objectively reasonable counsel would have moved to continue the trial date in light of new information revealed during the pre-trial motion, including the fact that Thomas identified a person other than Mitchell, in a photo lineup, as the person that shot him. Petitioner argues that counsel should have recognized the importance of this information in that it could have led to "potentially exculpatory evidence in support of [his] testimony...." Petitioner states that he was prejudiced because, had the person Thomas identified been the actual shooter, the Commonwealth's witnesses would have been impeached and it is reasonably probable that the outcome of the trial would have been different.

In addition, petitioner asserts that trial counsel's acquiescence to the prosecution's motion to "join the pretrial motion with the trial ... permeated [his] entire trial process" and "was obviously unfair and denied [him] a fair trial" because it "led to confusion and numerous conflicts with customary trial proceedings and examination processes of criminal trials" such as allowing the "Commonwealth [to] both examine[] and cross-examine[] its own witnesses, which is not proper procedure at trial," and allowing testimony which violated the Confrontation Clause.

The state habeas court determined that petitioner "provide[d] no factual support for his conclusory allegations" and that petitioner did not "proffer any support that there was a legitimate objection for counsel to make, or that he suffered any harm other than the testimony implicated him." The court went on to find that petitioner could not "show prejudice because of

the overwhelming evidence of his guilt. There were numerous witnesses to this horrendous

crime who identified [petitioner] as one of the shooters. [Petitioner] fail[ed] to show any

likelihood of a different result had the pretrial motion been heard prior to the day of trial."

> It is by now well-established that in a criminal trial, defense counsel has the
> authority to manage most aspects of the defense without first obtaining the
> consent of the defendant. Decisions that may be made without the defendant's
> consent primarily involve trial strategy and tactics, such as what evidence should
> be introduced, what stipulations should be made, what objections should be
> raised, and what pre-trial motions should be filed.

United States v. Chapman, 593 F.3d 365, 367–68 (4th Cir. 2010) (internal quotation marks and

citations omitted). The decisions made by trial counsel that form the basis of this claim fall

within the category of trial management, and thus, within the discretion of trial counsel.

Petitioner provides no proof to support his conclusory assertions regarding these strategic

decisions. Thus, the findings of the state habeas court are neither contrary to, nor an

unreasonable application of, existing federal law and Supreme Court precedent. They also do

not rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is

entitled to deference, and Claim Two will be dismissed.

### C. Claim Three

Petitioner asserts that his counsel was ineffective for failing to raise a Brady violation on

appeal. In his petition, petitioner states that the Brady violation was the prosecution's

withholding of Priest's statement that she saw two individuals with guns; however, in his

Opposition Memorandum and Supplemental Brief in Opposition, petitioner argues that the Brady

violation was the prosecution's withholding of Thomas' identification of someone other than

Mitchell as the person who shot him. Respondent argues that petitioner's claim regarding the

13

withholding of Thomas' identification was not presented to the state habeas court, and therefore, is "unexhausted and defaulted."

Before bringing a federal habeas petition, state prisoners must first exhaust their claims in the appropriate state court. Failure to exhaust all claims requires dismissal of the complaint to allow the petitioner to first present his claims to the appropriate state courts. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982); Preiser v. Rodriguez, 411 U.S. 475 (1973). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner must present the same factual and legal claims raised in the instant case to the Supreme Court of Virginia on direct appeal, or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364 (1995).

If it is clear that a claim asserted in federal habeas review is unexhausted because it has never been raised in state court, but would presently be deemed procedurally defaulted under clearly established, regularly enforced state law, then, absent a showing of cause for the default and prejudice arising from the claim, that claim must be deemed simultaneously exhausted and procedurally defaulted in federal habeas review. Gray v. Netherland, 518 U.S. 152, 161-62 (1996).

The state habeas court stated that petitioner "allege[d] that the prosecutor committed a Brady violation regarding Priest's statements." Therefore, petitioner did not present the claim regarding Thomas' identification to the state habeas court. Any state habeas petition filed by petitioner at this time would be deemed procedurally defaulted as being successive. See Va.

14

Code § 8.01-654(B)(2).  As petitioner has not shown cause for the default or prejudice arising

from this claim, petitioner's claim regarding Thomas' identification is simultaneously exhausted

and procedurally defaulted.

As to petitioner's arguments related to Priest's statement, the state habeas court dismissed

this claim because petitioner did not plead "sufficient facts to demonstrate a Brady violation."

Specifically, the court found that petitioner "failed to demonstrate that the prosecutor was aware

of Priest's statement being potentially different than the statement the police recorded.  The

prosecution turned over what it believed was Priest's accurate statement."  The court also found

that "it is within the discretion of counsel to weigh and decide the strongest issues for appeal"

and "an appeal of a Brady violation was not a strong issue because it lacked any merit.

Therefore, [petitioner] failed to show trial counsel was deficient in not raising the issue on

appeal."

> The range of reasonable professional assistance is just as wide on direct appeal as
> it is at trial. In particular, counsel is not obligated to assert all nonfrivolous issues
> on appeal, as there can hardly be any question about the importance of having the
> appellate advocate examine the record with a view to selecting the most
> promising issues for review.  Indeed, requiring counsel to raise every claim, or
> even a multiplicity of claims, runs the risk of detracting from contentions that may
> be truly meritorious. Appellate counsel accordingly enjoys a presumption that he
> decided which issues were most likely to afford relief on appeal, a presumption
> that a defendant can rebut only when ignored issues are clearly stronger than
> those presented.

United States v. Baker, 719 F.3d 313, 318 (4th Cir. 2013) (internal quotation marks, citations,

and alterations omitted).  Petitioner has not shown that any Brady issue raised on appeal would

have been meritorious or that it was "clearly stronger" than the arguments raised on appeal.

Therefore, the state habeas court's determination that petitioner failed to show trial counsel was

deficient or that he was prejudiced by trial counsel's failure to raise a Brady violation on appeal

is neither contrary to, nor an unreasonable application of, existing federal law. The state habeas court's determination also does not rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference and Claim Three will be dismissed.

### D. Claim Four

Petitioner claims that he was denied effective assistance of counsel when counsel failed to object to a Brady violation during the trial. Petitioner alleges that the Brady violation was the prosecution's failure to disclose the photo lineups from which Thomas and Williams picked out an individual other than Mitchell as the shooter identified as "Rio." Petitioner argues that, if he had been given access to the photo lineups, he would have been able to accurately identify "Rio," who petitioner contends is not Mitchell, and "Rio" would have been able to corroborate petitioner's testimony that he was not involved in the shooting. Therefore, petitioner asserts, trial counsel's performance was deficient because he did not recognize the importance of the Brady violation. If he had, petitioner claims, a reasonable probability exists that the outcome of the trial would have been different.

The state habeas court dismissed this claim, finding that petitioner failed "to demonstrate a Brady violation," in part because he was "misrepresenting the record" and "fail[ed] to proffer any facts that the prosecutor suppressed exculpatory photo arrays that the witnesses identified other potential suspects." The court also found that "any Brady objection to the photo spreads by trial counsel would have been without merit and frivolous. Counsel cannot be ineffective for failing to raise a frivolous or futile argument to the Court." Finally, the state habeas court found that petitioner failed

> to demonstrate how an identification of Mitchell would have any bearing on his own culpability, where numerous witnesses testified he shot the victims and he testified himself that he was at the scene of the shooting. Therefore, the Court

16

finds that [petitioner] has failed to show, but for counsel's failures, the result of the proceeding would have been different.

This court has previously held that a trial counsel's decision to not make a frivolous objection was not "'outside the range of professionally competent assistance.'" Baker v. Dir., Va. Dep't of Corr., 2014 WL 1305001, at *4 (E.D. Va. Apr. 1, 2014) (quoting Strickland, 566 U.S. at 688). Thus, the state habeas court's finding that petitioner failed to satisfy either prong of the Strickland test was neither contrary to, nor an unreasonable application of, existing federal law. Additionally, the finding does the finding rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference and Claim Four will be dismissed.

### E. Claim Five

Petitioner argues that he was denied effective assistance of counsel when his trial counsel failed to investigate Mitchell's mental state and capacity. Petitioner asserts that Mitchell was deemed to be incompetent after trial, in part because he had a lifelong history of mental illness including paranoid schizophrenia with hallucinations. Petitioner argues that his counsel's failure to investigate Mitchell's mental status and communicate with co-defendant's counsel prior to the trial denied him defenses and a fair trial because Mitchell's mental status at the time of the crime and before trial was "highly material."

The state habeas court dismissed this claim because it was "not based on facts" and was "wholly speculative." The court went on to state that petitioner was "merely using this claim as a fishing expedition to obtain Mitchell's medical records." The court also held that this claim was not supported by any evidence that "Mitchell had a mental illness, was incompetent at the time of the crime, at the time of trial, or at any other time." Finally, the state habeas court held

17

that petitioner failed "to show, even if Mitchell was incompetent or suffering from a mental illness, how that affects [petitioner's] own culpability for the crimes."

Petitioner makes conclusory allegations that his counsel's failure to learn of Mitchell's mental health status prior to trial prejudiced the outcome of the trial; however, the record shows that there were multiple eyewitnesses that identified petitioner as one of the shooters. Thus, petitioner has not established how testimony regarding Mitchell's mental health at the time of the crime or prior to trial would have had a reasonable probability of changing the outcome of the trial for petitioner. Therefore, the state habeas court's finding that petitioner failed to meet the prejudice prong of the Strickland standard is neither contrary to, nor an unreasonable application of, existing federal law. The state habeas court's determination also does not rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference and Claim Five will be dismissed.

### F. Claim Six

Petitioner argues that he was denied effective assistance of counsel because counsel failed to communicate with co-defendant's counsel and investigate Mitchell's identity. Petitioner states that he informed his counsel that he did not believe that Mitchell was the shooter identified as "Rio" but that his counsel failed to investigate this claim. When petitioner testified at trial that Mitchell was not "Rio," petitioner asserts that, without any corroboration of this testimony, his credibility was affected.

The state habeas court dismissed this claim because petitioner failed "to proffer what would have been discovered through an investigation and how that would have been beneficial. [Petitioner] makes multiple accusations, without supporting facts ...." The court also found that

18

petitioner failed to show how he was prejudiced because he was "identified by the eye witnesses, the victims were severely injured, and [petitioner] admitted to being at the scene. [Petitioner's] allegations in this claim solely address Mitchell's culpability in the crime and have no bearing on [petitioner's] culpability."

"[I]t is well-settled that 'an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced.'" Brizuela v. Clarke, 112 F. Supp. 3d 366, 376 (E.D. Va. 2015), appeal dismissed, 633 F. App'x 178 (4th Cir. 2016) (quoting Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir.1996); citing Bassette v. Thompson, 915 F.2d 932, 940–41 (4th Cir.1990) (petitioner must allege "what an adequate investigation would have revealed")). Petitioner makes the conclusory allegation that an investigation into the identity of "Rio" would have led trial counsel to the other shooter's real identity, and then that person would corroborate petitioner's testimony. These assumptions are not a proffer as required to sustain this ineffective assistance of counsel claim. Thus, the state habeas court's finding is neither contrary to, nor an unreasonable application of, existing federal law. Additionally, the state habeas court's determination does not rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference and Claim Six will be dismissed.

### G. Claim Seven

Petitioner argues that he was denied effective assistance of counsel because counsel failed to raise the issue of Mitchell's incompetency on direct appeal. Petitioner asserts that Mitchell's mental health issues impacted his behavior during the shooting, as well as his ability

19

to prepare for trial. Therefore, petitioner claims, this evidence would have had a reasonable probability of the trial resulting in a different outcome.

The state habeas court dismissed this claim because petitioner provided "no support for Mitchell's incompetency or mental health issues" and failed to "show how Mitchell's incompetency affects [petitioner's] own culpability, and therefore that he was in any way prejudiced by the alleged failures of counsel." The court went on to point out that petitioner's "counsel did not have actual evidence of Mitchell's mental health or competency in order to raise it on appeal" and that, on appeal, "counsel was able to focus on the viable claims, and not the meritless ones [petitioner] argues in this petition."

As previously discussed, "[a]ppellate counsel … enjoys a presumption that he decided which issues were most likely to afford relief on appeal, a presumption that a defendant can rebut only when ignored issues are clearly stronger than those presented." Baker, 719 F.3d at 318. Petitioner has not shown that any argument raised on appeal regarding Mitchell's mental health would have been meritorious or that it was "clearly stronger" than the arguments raised on appeal. Therefore, the state habeas court's determination is neither contrary to, nor an unreasonable application of, existing federal law. The state habeas court's determination also does not rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference and Claim Seven will be dismissed.

**H. Claims Eight and Nine**

In Claim Eight, petitioner argues that he was denied effective assistance of counsel because counsel failed to object when the prosecutor allegedly lied during trial. Specifically, petitioner states that the prosecutor lied each time she stated Bennette was shot none times.

Petitioner asserts that this was a lie because only eight shell casings from the same gun were recovered at the scene of the crime. Petitioner argues that he was prejudiced because there is a reasonably probability that his testimony at trial would have been more "credible if [the] finder of fact would have known that the total number of wounds inflicted on the victims was consistent with [his] testimony. The court also determined the [p]etitioner used excessive force not due to the victim's injuries but due to how many times they were allegedly shot."

The trial court dismissed this claim because "trial counsel could weigh the benefits and risks of requiring the Commonwealth to bring in the substantial medical testimony and photographs of the grievous injuries." The court went on to find that "the injuries in this case were not contested, as [petitioner] testified to being at the shooting. [Petitioner's] defense contested his culpability as he denied actually pulling the trigger." Finally, the court found that petitioner failed "to demonstrate prejudice based on the overwhelming evidence of guilt."

In Claim Nine, petitioner argues that he was denied effective assistance of counsel because counsel failed to object when the prosecutor allegedly suborned perjury. Specifically, petitioner argues that the prosecution allowed "Thomas to testify falsely to seeing a firearm in [petitioner's] hand" even though she knew that Thomas previously stated that petitioner did not have a gun. Had trial counsel objected, petitioner argues, there is a reasonable probability that Thomas' testimony would have been excluded or given less weight by the fact finder, thus changing the outcome of the trial.

The state habeas court dismissed this claim because it was unsupported by any proffers of evidence, any objection by trial counsel would have been futile without proof of prosecutorial

misconduct, and petitioner failed to show that trial counsel's objection would have resulted in a different trial outcome.

Again, a trial counsel's decision to not make a frivolous objection is not "'outside the range of professionally competent assistance.'" Baker, 2014 WL 1305001, at *4 (quoting Strickland, 566 U.S. at 688). In Claim Eight, petitioner makes the assumption that the victims must have only been shot a total of eight times because there were only eight casing found at the scene of the crime; however, this is unsupported by any evidence. In Claim Nine, petitioner asserts that the prosecution suborned perjury simply because the witness had made a prior inconsistent statement. This is also not supported by evidence. Thus, the state habeas court's finding that petitioner failed to satisfy either prong of the Strickland test for both of these claims was neither contrary to, nor an unreasonable application of, existing federal law. Additionally, the finding does not rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference and Claims Eight and Nine will be dismissed.

### I. Cumulative Prejudice

In his Supplemental Brief in Opposition to Motion to Dismiss, petitioner argues that, "even if there is no one instance of ineffective assistance of counsel or prosecutorial misconduct is [sic] found to require relief, they must be considered in the aggregate." Petitioner did not present this claim to the state habeas court. In addition, any state habeas petition filed by petitioner at this time would be deemed procedurally defaulted as being successive. See Va. Code § 8.01-654(B)(2). Therefore, this claim is deemed simultaneously exhausted and procedurally defaulted, and is dismissed.

## VI. Conclusion

Nothing in the state court record indicates that the state court decisions were either contrary to, or an unreasonable application of, clearly established federal law, nor did those decisions involve an unreasonable determination of the facts. Additionally, petitioner failed to demonstrate that his counsel's performance was deficient or that he was prejudiced by his counsel's actions. Accordingly, this petition will be dismissed with prejudice by an Order to be issued with this Memorandum Opinion.

Entered this _____ day of _____ 2016.

Alexandria, Virginia

_____
/s/
Liam O'Grady
United States District Judge